FILED
2012 Jun-13  AM 11:32
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JOHN ANTHONY PERYER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:11-cv-03094-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff John Anthony Peryer ("Peryer") brings this action pursuant to
Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking
review of the final adverse decision of the Commissioner of the Social Security
Administration ("SSA"). This court finds that the Administrative Law Judge's
("ALJ") decision - which has become the decision of the Commissioner - is
supported by substantial evidence, and, therefore, will **AFFIRM** the decision
denying benefits.

# I. Procedural History

Peryer filed applications for a period of disability, disability insurance benefits, and supplemental security income on August 3, 2009, (R. 10), alleging a disability onset date of May 12, 2009, *id*., due to a dislocated right foot, fibromyalgia, bronchitis, carpal tunnel syndrome, depression, and a learning disability.  (R. 255).  After the SSA denied his application on November 12, 2009, Peryer requested a hearing, which he received on November 15, 2010.  (R. 10).  At the time of the hearing, Peryer was 35 years old, weighed 300 pounds, had a twelfth grade education, and his past relevant work included work as a newspaper carrier.  (R. 17, 18, 81, 85).  On January 26, 2011, the ALJ found that Peryer has borderline intellectual function, a learning disability, depressive and anxiety disorder, history of a fracture to his right foot, obesity, and fibromyalgia.  (R. 12).  However, the ALJ determined that Peryer had a residual functional capacity ("RFC") that allowed Peryer to perform a reduced-range of light level work, that Peryer is capable of performing his past relevant work as a newspaper carrier, and, therefore, denied Peryer's claim.  (R. 16, 18-20).  Peryer appealed and on June 24, 2011, the Appeals Council denied his request for review.  (R. 1).  Peryer then filed this action pursuant to 42 U.S.C. § 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the ALJ's residual functional capacity findings are based on substantial evidence, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ properly developed the record.  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review

of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national

economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative

answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20

C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can

do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, Peryer alleges disability because of pain, he must

satisfy additional criteria.  In this circuit, "a three part 'pain standard' [is applied]

when a claimant seeks to establish disability through his or her own testimony of

pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th

Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical
> condition and either (2) objective medical evidence that confirms the
> severity of the alleged pain arising from that condition or (3) that the
> objectively determined medical condition is of such a severity that it
> can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761
F.2d 1545, 1548 (11th Cir. 1985).

> While both the regulations and the *Hand* standard require objective
> medical evidence of a condition that could reasonably be expected to
> cause the pain alleged, <u>neither requires objective proof of the pain
> itself.</u>  Thus under both the regulations and the first (objectively
> identifiable condition) and third (reasonably expected to cause pain
> alleged) parts of the *Hand* standard <u>a claimant who can show that his
> condition could reasonably be expected to give rise to the pain he
> alleges has established a claim of disability and is not required to
> produce additional, objective proof of the pain itself.</u>  *See* 20 CFR §§
> 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

information omitted) (emphasis added).  Moreover, "[a] claimant's subjective

testimony supported by medical evidence that satisfies the pain standard is itself

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if

a claimant testifies to disabling pain and satisfies the three part pain standard, the

ALJ must find him disabled unless the ALJ properly discredits his testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the

ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for
> refusing to credit a claimant's subjective pain testimony, then the [ALJ], as
> a matter of law, has accepted that testimony as true.  Implicit in this rule is
> the requirement that such articulation of reasons by the [ALJ] be supported
> by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either

fails to articulate reasons for refusing to credit the claimant's pain testimony, or if

the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the claimant and render a finding of disability. *Id.*

## IV. The ALJ's Decision

Turning now to the ALJ's decision, the court notes that, initially, the ALJ determined that Peryer has not engaged in substantial gainful activity since May 12, 2009, and therefore met Step One of the five step analysis. (R. 12). Next, the ALJ acknowledged that Peryer's severe impairments of "borderline intellectual functioning, learning disability, depressive disorder and anxiety disorder, history of a fracture to the right foot in a motor vehicle accident, obesity, and fibromyalgia" met Step Two. (R. 12). The ALJ then proceeded to the next step and found that Peryer did not satisfy Step Three since he does not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." (R. 14). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Peryer

> has the residual functional capacity to perform light work . . . . He can occasionally lift and carry 20 pounds occasionally and 10 pounds frequently. He can only occasional [sic] perform job tasks that require pushing and pulling foot controls with the right foot. He has no restrictions on the left foot. He cannot climb ropes, ladders, or scaffolds. He can occasionally climb ramps and stairs. He can reach overhead occasionally. He has not [sic] restriction with fingering and

handling.  He cannot be exposed to unprotected heights or moving or dangerous machinery.  The claimant is limited to unskilled work.  He can have no more than occasional interaction with the public, co-workers, and supervisors.

(R. 16).  In light of Peryer's RFC, the ALJ held that Peryer "is capable of performing past relevant work as a newspaper carrier," (R. 18), and determined that Peryer is not disabled, (R. 19-20); *see also McDaniel*, 800 F.2d at 1030.  It is this finding that Peryer challenges.

## V.  Analysis

The court turns now to Peryer's contentions that (1) the ALJ's RFC findings are not based on substantial evidence, and (2) the ALJ failed to develop the record. Doc. 7 at 1. The court will address each contention in turn.

### A.    The ALJ's RFC Finding is Based on Substantial Evidence

Peryer's first argument is that the ALJ erred because the "ALJ asserted that he concurred with [Dr. Robert Heilpern's ("Dr. Heilpern") state agency Physical RFC Assessment] but in fact the ALJ's rationale and his RFC findings demonstrate that he did not concur."  Doc. 7 at 7.  As it relates to Dr. Heilpern, on November 10, 2009, he performed an assessment in which he found that Peryer can occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk for a total of 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday,

has limited pushing and/or pulling abilities in lower extremities, can frequently climb ramps/stairs, can never climb ladders/ropes/scaffolds, and has limited reaching in all directions. (R. 415-422).  The ALJ concurred with Dr. Heilpern's assessment, but "reduced the overall exertional capability from a range of medium to a reduced range of light work.  That is, occasional lifting and carrying of up to 20 pounds with frequent lifting and carrying up to 10 pounds."  (R. 17). Additionally, the ALJ agreed that Peryer is limited to no more than occasional pushing and pulling with his lower right extremities with no restrictions on the left, that Peryer should engage in no more than occasional overhead reaching bilaterally, and that there should be a total restriction from climbing ladders, ropes, and scaffolding.  (R. 17-18).  However, the ALJ held that Peryer can only occasionally climb ramps and stairs, rather than frequently as Dr. Heilpern opined. (R. 17-18).  Furthermore, unlike Dr. Heilpern, the ALJ restricted Peryer from working at unprotected heights and around dangerous, moving, unguarded machinery due to Peryer's lack of agility because of obesity.  (R. 18).

Peryer's argument that the ALJ erred because "his rationale and his RFC findings demonstrated that he did not concur" with Dr. Heilpern is misplaced because the ALJ only has to *consider* the RFC assessments made by state agency medical consultants as "statements about what [the plaintiff] can do."  20 C.F.R. §

404.1513(c).  Ultimately, however, the responsibility for assessing the RFC falls on the ALJ.  20 C.F.R. § 416.946.  Thus, the fact that the ALJ stated that he concurred with the state agency's opinion, but yet limited Peryer's RFC additionally is irrelevant because the ALJ is "not bound by any findings made by State agency medical or psychological consultants."  20 C.F.R. 404.15279(e)(2)(i).  Rather, in determining whether the claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [he] received."  20 C.F.R. 404.15279(b).  Moreover, the ALJ's decision to disagree, in part, with Dr. Heilpern and limit Peryer's RFC benefitted Peryer.  Again, unlike Dr. Heilpern who said Peryer can occasionally lift 50 pounds, i.e., medium range work, and frequently climb ramps and stairs, the ALJ reduced Peryer to a 20 pound lifting limitation, i.e., light work, and limited Peryer to occasional climbing stairs and ramps.  In other words, any error by the ALJ was harmless since it benefitted Peryer.  In any event, the ALJ did not err in limiting Dr. Heilpern's findings because the ALJ considered Dr. Heilpern's assessment and the other relevant evidence, such as Peryer's obesity and intellectual functional ability, to determine a RFC of a reduced range of light work.  The ALJ also limited Peryer to unskilled work as a result of Peryer's intellectual functional ability and stated that he "should be stricken from no more than occasional interaction with

supervisors, coworkers and the general public." (R. 18).

Next, Peryer contends that the ALJ erred by substituting his own judgment for that of a physician by "splitting the difference between the prior ALJ's RFC finding on medical improvement of a reduced range of sedentary and a reviewing medical consultant's RFC for a range of medium work." Doc. 7 at 7.  On May 11, 2009, a different ALJ in an earlier petition awarded Peryer a closed period of disability from January 14, 2006, to February 1, 2007. (R. 46).  However, that ALJ found that beginning on February 2, 2007, Peryer had the RFC to perform sedentary work because Peryer could frequently lift up to 5 pounds, occasionally lift 10 pounds, would need a sit/stand option where he could sit for 2 hours at a time or stand for 1-1/2 hours at a time, and that Peryer's ability to reach overhead in all directions was limited to infrequently.  *Id.*  The prior ALJ's finding was based, in part, on evidence that Peryer held a position as a fry cook at Captain D's, which the VE classified as a medium, unskilled job, from February 2007 until May 2008.  (R. 82, 98, 262).  In other words, by his own actions, Peryer established that he could in fact perform work above the sedentary level by February 2, 2007.

While Peryer contends he stopped working at Captain D's because he could not stand for a long period of time due to pain in his foot, Peryer's employment at Captain D's supports the current ALJ's RFC that Peryer can at least perform a

limited light work job that is less strenuous than a medium unskilled job. Moreover, the record supports the current ALJ's RFC. Specifically, notwithstanding Peryer's testimony at the November 15, 2010, hearing, that it hurts "real bad" when he picks up anything over five pounds, (R. 93), the record shows him lifting far more than five pounds on at least two separate occasions: (1) on May 4, 2010, Peryer sought treatment at the Moulton Family Health Clinic (the "Clinic") for neck pain he sustained from picking up a generator the day before, (R. 430); and (2) on May 6, 2010, Peryer visited the Clinic again and complained about foot pain he sustained from dropping a 12-volt battery on his foot. (R. 478). Thus, Peryer's own actions support the ALJ's RFC determination of light work and the finding that Peryer is able to lift items over five pounds.

Critically, the ALJ's findings do not mean that the ALJ substituted his judgment for that of a physician. As previously stated, the ALJ found that Dr. Heilpern's medium level assessment is too strenuous for Peryer due to Peryer's obesity and intellectual functional ability. (R. 18). Moreover, the prior ALJ made his sedentary work determination before Peryer lifted a 12-volt battery and a generator. By lifting items that far exceed five pounds, Peryer's own actions negate the prior ALJ's RFC determination of sedentary work. Therefore, the ALJ here has the authority to "split the difference" between the prior ALJ's opinion

and a reviewing medical consultant's assessment especially when the medical opinions and other evidence in the record support a light work RFC determination.

Finally, Peryer contends that the ALJ's findings were inconsistent with rheumatologist Dr. Vijay Jampala's ("Dr. Jampala") findings.  Specifically, Peryer asserts that the "ALJ did not explain why he did not adopt or report Dr. Jampala's assessment of history of right foot pain, obesity, kidney stones, CTS, has chronic neck pain, bilateral shoulder pain, fatigue, myalgia and trigger point tenderness for fibromyalgia." Doc. 7 at 7.  On August 25, 2009, Dr. Jampala performed a rheumatology consultation and found that Peryer has a "history of Right foot pain, obesity, Neck pain, shoulder pain, fatigue, [and] Kidney stones." (R. 385). Moreover, Dr. Jampala found that Peryer has chronic foot pain and limitation in his right ankle movements.  *Id.*  During this visit Peryer reported not sleeping well and pain in his lower back area, but denied any injury to his back or chest pain. *Id*.  Although Dr. Jampala found no evidence of inflammatory joint or muscle disease,  he determined that Peryer probably has active fibromyalgia and noted that Peryer needed to lose weight and exercise more frequently.  (R. 386).

As stated previously, the ALJ reduced Peryer's overall exertional capacity from a range of medium, i.e. the level Dr. Jampala's assessed, to a reduced range of light work, (R. 17), "imposed restrictions on the claimant, as a result of lack of

agility due to obesity," (R. 18), stated that "the claimant is limited to no more than

occasional pushing and pulling with the right lower extremity," (R. 17), and that

Peryer "should engage in no more than occasional overhead reaching bilaterally,"

*Id*.  By adding additional limitations to Peryer's RFC to account for Peryer's

medical conditions,  it is clear that the ALJ considered Dr. Jampala's assessment.

More importantly, Peryer overlooks that the ALJ has to consider the rest of the

relevant evidence, in addition to the medical opinions, when making RFC

determinations.  20 CFR 404.15279(b).  As stated previously, the evidence here

supports the ALJ's decision to limit Peryer's RFC to account for the medical

limitations Dr. Jampala noted in his examination of Peryer.  Accordingly, the

ALJ's RFC determination is consistent with Dr. Jampala's assessment of Peryer.

## B.   *The ALJ Properly Developed the Record*

Peryer contends next that the ALJ should have (1) "made [the prior ALJ]

decision part of the record for a better understanding of the prior claims history . .

.," (2) obtained an opinion as to RFC either by a medical exam ("ME") or a

consultative exam ("CE"), (3) developed the record for clarification of Dr.

Jampala's findings, and (4) presented a better hypothetical to the VE that included

all of Peryer's conditions and limitations.  Doc. 7 at 8-10.  Additionally, Peryer

contends that because the ALJ failed to properly develop the record, the VE's

testimony was unreliable especially since the record purportedly failed to establish Peryer's past relevant work as a newspaper carrier. *Id*. at 9.

"The ALJ has a basic obligation to develop a full and fair record;" therefore, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997). Peryer failed to show the necessary prejudice for several reasons. First, as it relates to the ALJ's purported failure to make the prior ALJ's entire decision a part of the record "for a better understanding of Peryer's prior claims history and especially since both Plaintiff's intellectual functioning and physical RFC were in issue," it is apparent from the ALJ's opinion and RFC finding that he considered the opinion. Indeed, the ALJ acknowledged that his predecessor awarded Peryer a closed period of disability from January 1, 2006, to February 1, 2007, and found that Peryer had a reduced range of sedentary work beginning February 2, 2007. (R. 17). However, the ALJ also considered the relevant evidence that Peryer subsequently lifted more than five pounds on two occasions. Moreover, the ALJ's RFC assessment acknowledged the prior ALJ's finding that Peryer has limited intellectual functioning and found that "as a result of [Peryer's] intellectual functional ability he should be limited to unskilled work

and should be stricken from no more than occasional interaction with supervisors,

coworkers and the general public." (R. 17-18).  In short, it is clear that the ALJ

fully considered the prior ALJ's decision and, as a result, committed no error.

Second, although Peryer acknowledges that there is "no express requirement

for a medical source opinion (MSO) or [RFC] assessment to be of record in order

for the ALJ to make RFC findings," he contends nonetheless that the ALJ should

have obtained a ME or CE opinion because "[t]he ALJ's duty to develop the

record includes obtaining a [CE] when one is needed to make an informed

decision."  Doc. 7 at 6, 8-9.  Peryer has a misunderstanding of the law.  The

relevant law states that the "ALJ may ask the claimant to attend a consultative

examination at the Commissioner's expense, but only after the Commissioner

(through the ALJ) has given 'full consideration to whether the additional

information is needed . . . [or] is readily available from the records of [the

claimant's] medical sources."  *Doughty v. Apfel*, 245 F.3d 1274, 1280-81 (11th

Cir. 2001). Here, the ALJ simply had no reason to obtain a ME or CE opinion

because the ALJ considered Peryer's entire medical records, beginning on July 15,

2009, when Peryer visited the Lawrence Medical Center emergency room

complaining of a headache, and shoulder and rib pain. (R.368).  The chest x-ray

taken that day revealed no active chest disease, a heart size within normal limits,

and expanded and clear lungs.  (R. 374).  The physician noted that Peryer appeared alert and in no acute distress.  *Id*.  Six days later, on February 21, 2009, Peryer visited Moulton Family Health Clinic complaining of rib, shoulder, and neck pain. (R. 377).  Peryer's examination was normal, except for being obese and having an abnormal right shoulder and rib area.  *Id*.

The next entry in 2009 occurred on August 4, 2009, when Peryer visited the Lawrence Medical Center with complaints of neck, back and shoulder pain. (R.357).  The x-rays revealed no acute fracture or bone destructive process in either Peryer's shoulder or spine, but showed mild degenerative change in each shoulder's acromioclavicular joint and mild multilevel thoracic spondylosis in the spine.  (R. 357-360).  Three weeks later, on August 25, 2009, Dr. Jampala performed a rheumatology consultation and found that Peryer probably has active fibromyalgia, albeit without any evidence of inflammatory joint or muscle disease. (R. 386).  There are no other medical visits in 2009.

On January 18, 2010, Peryer visited Dr. Faye Wilson ("Dr. Wilson") at Moulton Family Health Clinic complaining of fatigue from lack of sleep.  (R. 427).  Peryer returned to Dr. Wilson on January 26, 2010, with swollen and itchy hands (R. 428).  On February 5, 2010, Peryer visited Dr. Wilson complaining of a swollen throat. (R. 429).  Except for Peryer's vision and respiration, almost every

aspect of his examination was normal.  *Id.*

The next medical visit occurred on May 4, 2010, when Peryer visited the doctor with complaints of neck pain he sustained from picking up a generator the day before.  (R. 430).  Two days later, Peryer visited the doctor again because of foot pain he sustained from dropping a 12-volt battery on his foot.  (R. 478). Peryer visited the physician five more times in 2010:

- On July 30, 2010, Peryer sought treatment for right hand pain that he rated a seven on the ten point scale due to getting his hand caught in the fan of the motor of a car.  (R. 495).

- On August 12, 2010, Peryer visited Dr. Wilson again with right rib pain, (R. 506), and the x-ray showed no evidence of active disease.  Peryer was released the same day and prescribed medication. (R. 509, 510, 516).

-  On August 17, 2010, Peryer visited Lawrence Medical Center for pain in his right arm, ribcage, and neck which he rated "as 9 on a one to ten scale." (R. 524).  The x-rays revealed no negative right rib series.  Peryer was released the same day and instructed to take over-the-counter pain medication.  (R. 525-26).

- On September 28, 2010, Peryer visited Lawrence Medical Center again for back pain he rated an eight on a ten point scale.  (R. 529, 534).  Although

the x-ray showed no acute fracture or dislocation, the physical examination revealed some tenderness on Peryer's back. (R. 530, 534, 536, 539). Peryer claimed that prescription medication improved the pain or provided comfort. (R. 534). The doctor prescribed Peryer medication and discharged him the same day. (R. 535).

• Peryer's last medical visit in the record occurred on October 14, 2010, where Peryer complained of low back pain. (R. 549). The doctor prescribed pain medication, and expected gradual improvement within a few days. (R. 548).

Again, the ALJ is obligated to request a CE only if the information needed to evaluate a claim is not readily available from the records of the medical sources. *See Doughty*, 245 F.3d at 1280-81. However, it is clear from the record that the ALJ had extensive medical records to make his RFC determination. Indeed, the ALJ's opinion acknowledges Peryer's limitations which the ALJ found were not disabling. (R. 13-14). For example, while Peryer contends that he has headaches three to four times a week, (R. 87), the medical record rarely shows visits to the doctor for headaches. Moreover, the ALJ also factored in Peryer's shoulder and back pain when he limited Peryer's ability to occasional overhead reaching and restricted Peryer from climbing ropes, ladders, and scaffolds. (R. 16).

Furthermore, Peryer's assertion that the ALJ needed to fully develop Dr. Jampala's findings ignores that there are sufficient medical records that support the ALJ's and Dr. Jampala's findings.  Therefore, the ALJ had sufficient medical evidence to make an informed decision about Peryer's RFC without obtaining a CE.

Finally, Peryer challenges the VE's testimony by contending that the ALJ failed to give the VE a comprehensive hypothetical and that the record fails to establish Peryer's past relevant work as a newspaper carrier.  Doc. 7 at 9-10. Peryer's assertion misses the mark because the ALJ's hypothetical adequately portrayed Peryer's limitations.  The ALJ asked the VE to assume an individual of Peryer's age, education and work history, that could only perform light work, whose lower extremity is limited to no more than occasional pushing and pulling with a foot patrol, no climbing of ropes, ladders or scaffolding, can occasionally climb stairs, limited to occasional reaching overhead, no working around unprotected heights, and only occasional interaction with supervisors, coworkers, and the general public.  (R.99-100).  The VE determined that based on Peryer's previous job history, a newspaper carrier is consistent with these limitations in the hypothetical.  Additionally, the VE stated that there are other jobs such as a packer/sealer, cleaner, and polisher that Peryer can perform.  (R. 101).  Thereafter, the ALJ then presented the VE with another hypothetical reducing the overall

physical functional ability from light to sedentary work, with the same limitations, and the VE opined that the claimant can perform jobs as a table worker and an assembler.  (R. 102).   In other words, the ALJ's hypothetical adequately portrayed Peryer's limitations and was properly developed.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Peryer is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 13th day of June, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE